

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-3-2005

# Comm Cap Corp v. Getronics Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3456

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Comm Cap Corp v. Getronics Inc" (2005). *2005 Decisions.* Paper 743.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/743

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 04-3456
_____

COMMONWEALTH CAPITAL CORP.

<u>Appellant</u>

v.

GETRONICS, INC.
f/k/a WANG LABORATORIES, INC.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Civil No. 00-2381)
District Judge: Honorable Louis H. Pollak

_____

Argued July 15, 2005

BEFORE: ALITO, VAN ANTWERPEN and ALDISERT, <u>Circuit Judges</u>

(Filed August 3, 2005)

Bruce Bellingham (Argued)
Daniel J. Dugan
Spector Gadon & Rosen, PC
1635 Market Street
Seventh Floor
Philadelphia, PA 19103

Counsel for Appellant

Scott A. Roberts (Argued)
Sullivan, Weinstein & McQuay, P.C.
Two Park Plaza
Boston, MA 02116

John P. Lavelle, Jr.
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street
51st Floor
Philadelphia, PA 19103-7599

Counsel for Appellee

_____

OPINION

_____

VAN ANTWERPEN, Circuit Judge

## I. FACTS

Under an agreement dated September 8, 1995, Varilease Corporation ("Varilease") leased computer equipment to Wang Laboratories, now known as Appellee Getronics, Inc. ("Getronics"), for a base monthly rate of $33,277.00. Upon termination of the lease, Getronics was obligated to "return the Equipment to Lessor . . . in the same operating order, repair, condition and appearance." (Appellant App. at 6.) On December 5, 1995, Varilease assigned its rights under the lease to Appellant Commonwealth Capital Corp. ("Commonwealth").

The parties terminated the lease on March 31, 1999, and Getronics shipped the leased equipment to Commonwealth's agent, Vital Technical Services ("Vital"). Commonwealth acknowledges that Vital received equipment from Getronics, and that the

physical serial numbers displayed on the case of the equipment matched the serial numbers of the leased equipment set forth in the Lease Agreement. However, Commonwealth noted that the electronic serial numbers[1] on the returned equipment did not match the physical case serial numbers or the serial numbers listed in the Lease Agreement. Furthermore, Commonwealth believed that the equipment was inoperative when returned, damaged beyond reasonable wear and tear, and missing some of the necessary computer manuals.

Commonwealth filed suit against Getronics in the United States District Court for the Eastern District of Pennsylvania. On October 8, 2003, Getronics renewed an earlier motion for summary judgment. On July 28, 2004, the District Court filed a Memorandum and Order granting summary judgment in favor of Getronics. This appeal followed.

## II. JURISDICTION

The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the parties met the diversity and amount in controversy requirements. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## III. CHOICE OF LAW

Because this case was originally brought in the Eastern District of Pennsylvania, we apply Pennsylvania's choice-of-law rules. Budget Rent-A-Car Sys., Inc. v. Chappell, 407 F.3d 166, 169 (3d Cir. 2005) (citing Klaxon Co. v. Stentor Electric Mfg. Co., 313

---

[1] The electronic serial number is the serial number displayed when the computer boots up.

3

U.S. 487, 496 (1941)).  In Pennsylvania, "the first question to be answered in addressing a potential conflict of laws dispute is whether the parties explicitly or implicitly have chosen the relevant law."  Assicurazioni Generali, S.P.A. v. Clover, 195 F.3d 161, 164 (3d Cir. 1999) (citing Smith v. Commonwealth Nat'l Bank, 557 A.2d 775, 777 (Pa. Super. Ct. 1989); Restatement (Second) Conflict of Laws § 187 (1971)).  The parties agree that Michigan state law, as provided for in the original Lease Agreement, applies to the underlying substantive questions in this case.

Federal law, however, provides the standard for determining whether the District Court's grant of summary judgment was appropriate.  Justofin v. Metro. Life Ins. Co., 372 F.3d 517 (3d Cir. 2004) ("A federal court sitting in diversity jurisdiction follows a Federal Rule of Civil Procedure when one of the Federal Rules controls the point in dispute.").  Consequently, we must determine whether "there is evidence from which a reasonable trier of fact could find in favor of the nonmoving party, viewing the record as a whole in light of the evidentiary burden the law places on that party."  United States v. 717 S. Woodward St., 2 F.3d 529, 533 (3d Cir. 1993) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252-56 (1986)).  Our review of this question is plenary.  Carrasca v. Pomeroy, 313 F.3d 828, 832 (3d Cir. 2002).

## IV. ANALYSIS

### A. Appellant Failed to Establish that Leased Equipment was not Returned

When it filed suit, Commonwealth's chief allegation was that Getronics did not

4

return the actual equipment it had leased. To support this claim, Commonwealth pointed out that two of the computers that Getronics returned displayed electronic serial numbers that differed from the physical case serial numbers and serial numbers listed in the Lease Agreement. The District Court rejected this argument and granted summary judgment in favor of Getronics.

There is no material factual dispute regarding whether Getronics returned equipment displaying the correct physical case serial numbers.[2] Nor is there any debate that two of the machines displayed different electronic serial numbers when they were booted up. Commonwealth explained, however, that pursuant to the Lease Agreement, it replaced the motherboards in the computers when it determined that the motherboards were defective, and this is why the electronic serial numbers were different from the physical case serial numbers.

Getronics does not dispute that Commonwealth took this action, nor does it deny that this action would explain the discrepancy. More importantly, Getronics offers no evidence that Commonwealth changed the physical case serial numbers, nor can it show that the returned computers have different features or perform differently than the original equipment. "Although entitled to the benefit of all justifiable inferences from the

---

[2]    Commonwealth suggests that the physical case serial numbers on the returned equipment were not permanently affixed, and could have been placed on the equipment by Getronics. However, "[m]ere speculation about the possibility of the existence of such facts does not entitle [Plaintiff] to go to trial." Sterling Nat'l Mortgage Co. v. Mortgage Corner, 97 F.3d 39, 45 (3d Cir. 1996). Therefore, we cannot credit Commonwealth's allegation on this point without evidence of Getronics's wrongdoing.

5

evidence, the nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered." 717 S. Woodward St., 2 F.3d at 533 (internal citations omitted). Given Getronics's uncontradicted[3] explanation for the serial number discrepancy, and Commonwealth's failure to come forward with any evidence to support its claim, summary judgment was appropriate.

## B. Appellant Failed to Establish that the Leased Equipment Was Returned in an Unacceptable Condition

According to the Lease Agreement, Getronics had a duty to return the equipment "in the same operating order, repair, condition and appearance as of the Installation Date, reasonable wear and tear excepted." (Appellant App. at 155.) Commonwealth argued that Getronics breached its contract obligations when it returned equipment with missing and broken parts.[4] To support this claim, Commonwealth only offered the sworn

---

[3] At oral argument, counsel for appellant all but conceded this point.

[4] Besides asserting a claim for damages for the broken equipment, Commonwealth also suggested that it is entitled to additional lease payments for the period from when the computers were returned inoperable to when they were repaired. Section 6(d) of the Lease Agreement provides only that Getronics must return the equipment in the same condition (reasonable wear and tear excepted) and that it is liable for holdover rent until the equipment is returned. It does not necessarily follow, however, that Commonwealth is entitled to rent if the equipment is returned damaged. Commonwealth has failed to set forth any factual or legal support to support this claim, and even if it did, Commonwealth's claim would be denied for the reasons discussed below.

statement of George Springsteen accompanied by an inventory of broken or missing parts. After reviewing the affidavit and inventory of missing equipment, we agree with the District Court that summary judgment was appropriate.

Springsteen's declaration states, "In March 1999, Defendant purported to return to Commonwealth the equipment subject to the Lease. Some of the equipment was not in working order at the time and it was returned, and it was not until June 1999 that Defendant had the equipment restored to working order." (Appellant App. at 255 ¶ 8.) Springsteen further averred that he had "personal knowledge of the matters set forth," and that he "personally inspected the computer equipment Defendant returned to Commonwealth in 1999." (Id. at 254-55 ¶¶ 1 & 11.) However, at oral argument Commonwealth's counsel stated Springsteen did not personally inspect the equipment. We therefore do not know exactly who did inspect the equipment, when he or she did so, and how Springsteen came by this knowledge. Thus, Commonwealth failed to "set forth such facts as would be admissible in evidence, and . . . show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).

Even if we were to accept Springsteen's affidavit, the accompanying list of broken and missing items is simply too ambiguous and indefinite. For instance, the inventory of damaged items includes entries such as "1x Media bay is empty; a media filler or 8MM tape drive has been removed" and "5x disk bays are empty; a disk filler or disk drive has been removed." (Appellant App. at 262.) However, Commonwealth cannot merely claim

7

that something is missing without specifying what it is. The difference between a device such as a drive, which can cost thousands of dollars, and an aesthetic component such as a filler, which can cost pennies, is significant. To the extent that Commonwealth is uncertain about what items are actually missing from the computers, its claim is merely speculative and not sufficient to warrant a trial. Sterling Nat'l Mortgage, 97 F.3d at 45.

The balance of items that Commonwealth identified as damaged or missing are computer parts including rollers, media bay doors, and media bay locks. Given that these parts bear the brunt of everyday use, have no impact on the functionality of the equipment, and cost relatively little to replace in comparison to the overall costs of the equipment, a reasonable jury could only conclude that these are the items likely to suffer usual wear and tear. Commonwealth offered no evidence that suggests that the damage to these parts goes beyond the wear and tear the Lease Agreement anticipated from everyday use, and we agree with the District Court that summary judgment was appropriate.

**C. Appellant Failed to Establish that Necessary Manuals Were Not Returned**

Commonwealth also argues that Getronics failed to return eleven manuals that it alleges were part of the equipment. The District Court granted summary judgment in favor of Getronics on this claim, explaining that there was no evidence that it was responsible for returning computer manuals.

Section 1 of the Lease Agreement states, "Lessor shall lease to Lessee, and Lessee shall hire from Lessor, the items of personal property described in the Schedule(s)

(collectively the 'Equipment', and individually an 'Item') which shall incorporate this Master Agreement." (Appellant App. at 45.) Under Section 6(d), at the termination of the term of the Lease Agreement, the Lessee was required to return all "Equipment" to the Lessor. Thus, if it was listed on the Equipment Schedule it should have been returned. (Id. at 46.)

Amendment No. 3 amends the Equipment Schedule and Installation Certificate and provides the exclusive list of "Equipment" leased to Getronics. The schedule lists "RM200/400 USER DOC. PKG." and "RM200/400 ADMINISTRATORS DOC PKG" as leased property. (Id. at 165.) Springsteen listed manuals for the RM400 and RM400-630 machines among the manuals that were missing. (Id. at 261.) Based on the similarity of the names, and because the entries on the schedule apparently refer to "packages" of documents, it is a reasonable inference that at least some of the manuals listed by Springsteen were included in the lease.

We have already concluded, however, that the Springsteen affidavit failed to satisfy Rule 56(e) insofar as it did not set forth facts that would be admissible into evidence. Commonwealth has not pointed to any other admissible evidence that the manuals in question were not returned. In light of these omissions, we agree with the District Court that Commonwealth has failed to present a triable issue regarding the proper return of the manuals.

**D. Appellant Failed to Establish it Was Entitled to Notification**

Finally, Commonwealth argues that even if Getronics returned the proper equipment, it breached the Lease Agreement by failing to notify Commonwealth that it had replaced the motherboards. Commonwealth relies on Section 6(c) of the Lease Agreement which states in relevant part:

> Lessee shall not without the prior written consent of Lessor, affix or install any accessory, feature, equipment or device to the Equipment or make any improvement, upgrade, modification, alteration or addition to the Equipment (any such accessory, feature, equipment, device or improvement, upgrade, modification, alteration or addition affixed or installed is an "Improvement").

(Appellant App. at 156.) Commonwealth argues that the replacement of the motherboards was an improvement, and Getronics was required to notify Commonwealth before installing them.

The District Court rejected Commonwealth's assertion and explained that the replacement of the motherboards complied with the Lessee's duties under paragraph seven of the Lease Agreement, which states in part:

> During the term of the Lease, Lessee shall, at its expense, keep the Equipment in good working order, repair, appearance and condition and make all necessary adjustments, repairs and replacements, all of which shall become the property of the Lessor.

(Appellant App. at 157.)

Where there is no ambiguity, the proper interpretation of a contract is a question of law, Schmalfeldt v. N. Pointe Ins. Co., 670 N.W.2d at 653 (Mich. 2003), and our review is plenary, Tudor Dev. Group v. U.S. Fid. & Guar. Co., 968 F.2d 357, 359 (3d Cir. 1992).

We agree with the District Court that Getronics was not required to notify Commonwealth of necessary repairs. Section 6 dictated that the Lessee notify the Lessor of any improvements that it made. Section 6 also defined what constituted an improvement, and outlined who was entitled to ownership of improvements at the termination of the lease. This section made no mention of repairs as improvements.

In contrast, Section 7 outlined the duty of the Lessee to maintain the equipment in good repair, and stated that all repairs would become the property of the Lessor at the termination of the lease. This section did not include a provision that required the Lessee to notify the Lessor of repairs, or seek pre-approval before making repairs.

Because the contract was clear in its discussion of improvements as distinct from repairs, the District Court properly held that Getronics had no duty to inform Commonwealth of necessary repairs. Summary judgment in favor of Getronics on this claim was therefore appropriate.

## V. CONCLUSION

For the reasons set forth above, we affirm the decision of the District Court.

11